UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. 8:21-cv-02932-SCB-JSS

NEW MARKET REALTY 1L LLC,

    Plaintiff/Counterclaim Defendant,

v.

GREAT LAKES INSURANCE SE,

    Defendant/Counterclaim Plaintiff.
_____/

**DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT ON AMENDED COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant/Counter-Plaintiff, Great Lakes Insurance SE ("Great Lakes"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, files this motion for final summary judgment, and incorporated memorandum of law, on its Amended Counterclaim for Declaratory Judgment[1], against Plaintiff/Counter-Defendant, New Market Realty 1L LLC (the "Insured," "Plaintiff" or "Plaintiff/Counter-Defendant"), and in support states as follows:

---

[1] Great Lakes moves for summary judgement on both counts for declaratory relief (collectively the "Amended Counterclaim"), as asserted in its Amended Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment. (ECF No. 24.)

## I. INTRODUCTION

Great Lakes' Amended Counterclaim revolves around a simple and easy-to-comply endorsement that requires the Insured to maintain more than one, and at least two, fire extinguishers at each of the ten properties insured under the subject commercial-lines insurance policy. The main issue in dispute between the parties, as pertinent to this motion, is the interpretation of the endorsement that requires fire extinguishers, <u>plural</u>, to be present at each insured location. To detract from its failure to comply with the endorsement, the Insured tries to create an ambiguity by crafting two alternative interpretations, which are unsupported by the endorsement's text and structure, and that are also plainly unreasonable. The Insured's attempt to re-write the endorsement and defy the only reasonable interpretation outlined by Great Lakes herein, should be rejected because the Insured's purported interpretations lack legal merit. Additionally, the Insured's admission that the subject property had only one fire extinguisher -- even if true -- confirms that the Insured breached the pertinent endorsement, thus warranting the denial of coverage. Accordingly, this Court should grant summary judgment in favor of Great Lakes as to the entirety of its Amended Counterclaim.

## II. STATEMENT OF FACTS

1. On or about December 21, 2020, Great Lakes issued a commercial-lines insurance policy to New Market Realty LLC, with a policy period from November 30,

2020 to November 30, 2021, and bearing the policy number LK453754 (the "Policy"). Ex. 1, Nichols Decl. ¶ 8, Tab "A." *See also* ECF No. 15-1.[2]

2. On or about January 5, 2021, Great Lakes executed a General Change Endorsement (SIU 5094 IL 01 17), amending the Named Insured of the Policy to New Market Realty 1L LLC. Ex. 1, Nichols Decl. ¶ 9; ECF No. 15-1 at 111.

3. The Policy provides coverage for ten (10) different scheduled properties. Ex. 1, Nichols Decl. ¶ 10; ECF No. 15-1 at 17-19.

4. The Policy specifically lists 1140 15th Ave S, St. Petersburg, FL 33705 (the "Property") as "Premises No. 9" on its Commercial Property Coverage Part Declarations (GLK 1004 PR 06 14). Nichols Decl. ¶ 11; ECF No. 15-1 at 18.

5. The Policy contains a PROTECTIVE SAFEGUARDS ENDORSEMENT (CP 04 11 10 12) (the "Protective Safeguards Endorsement") which provides, in relevant part:

---

[2] For ease of reference throughout this motion, Great Lakes will refer to the pertinent page numbers of ECF No. 15-1 when citing to the Policy.

POLICY NUMBER: LK453754　　　　　　　　　　　　　　　　　COMMERCIAL PROPERTY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CP 04 11 10 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-9 |
| 2 | 1 | P-9 |
| 3 | 1 | P-9 |
| 4 | 1 | P-9 |
| 5 | 1 | P-9 |
| 6 | 1 | P-9 |
| 7 | 1 | P-9 |
| 8 | 1 | P-9 |

Describe any "P-9": FIRE EXTINGUISHERS

POLICY NUMBER: LK453754　　　　　　　　　　　　　　　　　COMMERCIAL PROPERTY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CP 04 11 10 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 9 | 1 | P-9 |
| 10 | 1 | P-9 |

Describe any "P-9": FIRE EXTINGUISHERS

A. The following is added to the Commercial Property **Conditions:**

**Protective Safeguards**
1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

    2. The protective safeguards to which this endorsement applies are identified by the following symbols:

* * * *

"**P-9**", the protective system described in the Schedule.

* * * *

    **B.** The following is added to the **Exclusions** section of:
        Causes Of Loss – Basic Form
        Causes Of Loss – Broad Form
        Causes Of Loss – Special Form
        Mortgageholders Errors And Omissions Coverage Form
        Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

* * * *

Ex. 1, Nichols Decl. ¶ 12; ECF No. 15-1 at 39-42.

    6.    On December 21, 2020, the Property suffered a fire loss (the "Loss"), and the Insured notified Great Lakes of the Loss the same day. Ex. 1, Nichols Decl. ¶ 13.

    7.    On May 27, 2021, Great Lakes conducted an examination under oath of Joseph Lovett, the sole owner and member of New Market Realty 1L LLC. Ex. 1, Nichols Decl. ¶ 14, Tab "B," Lovett Exam., 8:19-9:8.

8. During the examination, Mr. Lovett asserted that the Property had only one fire extinguisher. *Id*. at 34:1-35:11.[3]

9. On August 17, 2021, Great Lakes denied coverage for the Loss on the basis that the Insured had materially breached the Protective Safeguards Endorsement by failing to maintain multiple fire extinguishers at the Property. Ex. 1, Nichols Decl. ¶ 15.

10. On November 8, 2021, in response to the Insured's Notice of Intent to Initiate Litigation, Great Lakes again denied coverage for the Loss on the basis that the Insured had materially breached the Protective Safeguards Endorsement by failing to maintain multiple fire extinguishers at the Property. *Id*. at ¶ 16.

### III. PROCEDURAL HISTORY

This action was filed on November 9, 2021 in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, asserting a single count for breach of contract and alleging that Great Lakes breached the Policy by denying coverage for the Loss. (ECF No. 1-1.) The original complaint named New Market Realty, LLC as the plaintiff as opposed to the Named Insured, New Market Realty 1L, LLC.

Great Lakes removed the case on December 17, 2021. (ECF No. 1.) Shortly thereafter, Great Lakes filed its Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment. (ECF No. 7.) Great Lakes' affirmative defenses raised the

---

[3] While Great Lakes otherwise disputes that the Insured had *any* fire extinguishers at the Property at the time of loss, Great Lakes cites to Mr. Lovett's admission that a single fire extinguisher was present for purposes of this motion and further acknowledges the Insured's reliance on Mr. Lovett's assertion in this litigation.

6

issue of Plaintiff's breach of the Protective Safeguards Endorsement by either not having any fire extinguishers or only having one at the Property. (*Id.* at ¶¶ 18, 19.) Great Lakes' counterclaim was similarly premised on this issue, asking for a declaration that Plaintiff breached the Protective Safeguards Endorsement such that Great Lakes owed no insurance coverage on the claim. (*Id.* at ¶¶ 27-28, 48-54.)

Plaintiff filed an Amended Complaint on January 21, 2022, naming itself as the owner of the Property at the time of the loss. (ECF No. 15.) The Amended Complaint did not substantively change the previously asserted claim for breach of the insurance contract due to Great Lakes' denial of coverage.

On February 4, 2022, Great Lakes filed its Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment in response to the Amended Complaint. (ECF No. 16.) Great Lakes asserted the same relevant defenses and grounds for declaratory relief. (*Id.* at p. 5-6, 8, 12-16.)

On February 24, 2022, Great Lakes filed its Amended Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment.[4] (ECF No. 24.) In the Amended Counterclaim, Great Lakes asserted two counts for declaratory relief pursuant to 28 U.S.C. § 2201. The first count seeks a declaration that the Protective Safeguards Endorsement requires Plaintiff to maintain at least two fire extinguishers at the Property. The second count seeks a declaration that there is no coverage for the

---

[4] This is the operative pleading for the purposes of this motion, which contains Great Lakes' Amended Counterclaim asserting two counts for declaratory relief.

Loss due to Plaintiff's breach of the Protective Safeguards Endorsement for not maintaining at least two fire extinguishers at the Property.

On March 11, 2022, Plaintiff filed a Motion to Dismiss Great Lakes' Amended Counterclaim (the "Motion to Dismiss"), arguing that declaratory relief is not appropriate absent allegations that the Policy is ambiguous and is also duplicative of Plaintiff's own breach-of-contract claim. (ECF No. 25, p. 3-6.)

On April 22, 2022, this Court denied the Motion to Dismiss, finding that the Amended Counterclaim for "declaratory relief constitutes an actual controversy appropriate for judicial resolution" based on "an ongoing live controversy with respect to contractual obligations under the subject Policy." (ECF No. 31, p. 7.) The Court ruled that a declaratory judgment could be issued to address Great Lakes' "requests that the Court adjudicate the rights of the parties under the Policy, which the Court can determine based on the pleadings and the Policy." (*Id*. at p. 8.) The Court rejected Plaintiff's contention that the Amended Counterclaim was subsumed with Plaintiff's claim and was redundant of Great Lakes' affirmative defenses. The Court aptly ruled that the Amended Counterclaim "asks for an affirmative declaration that its interpretation of the PROTECTIVE SAFEGUARDS ENDORSEMENT … is correct." (*Id*. at p. 11.)

On April 28, 2022, Plaintiff/Counter-Defendant filed an Answer and Affirmative Defenses to the Amended Counterclaim. (ECF No. 32.) In defense, Plaintiff/Counter-Defendant does not dispute that the Protective Safeguards Endorsement uses the plural "extinguishers," but it pleads that the Protective

8

Safeguards Endorsement is ambiguous as it is allegedly subject to more than one reasonable interpretation. Plaintiff/Counter-Defendant purports to outline two interpretations of the Policy. The first alleged interpretation is that the Policy requires only one fire extinguisher at each of the ten properties listed in the Policy. (*Id.* at ¶¶ 72-73.) The second alleged interpretation is that the Policy requires at least two fire extinguishers among the ten different locations. (*Id.*) Plaintiff/Counter-Defendant disputes Great Lakes' interpretation that the Endorsement requires more than one fire extinguisher at each location. (*Id.* at ¶ 73.)

## IV.     ARGUMENT

### A.     Legal Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). That burden shifts if the moving party shows the court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the burden has shifted, the nonmoving party must designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Genuine issues of material fact only exist if a reasonable jury considering the evidence presented could

find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quoting *First Nat'l Bank of AZ v. Cities Serv. Co.*, 391 U.S. 253 (1968)). To be genuine, there must be more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Court must consider all the evidence in the light most favorable to the nonmoving party in determining whether a material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 n.2 (1986). However, the facts must only be viewed in a light most favorable to the non-moving party if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When the opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Where one party's story is directly contracted by the record, such that no reasonable jury would believe it, summary judgment is proper. *See Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**B.      Insurance Policy Interpretation Principles.**

Florida law controls the interpretation of the Policy as this case is based on diversity subject-matter jurisdiction. Under Florida law, the interpretation of

10

provisions of an insurance policy is a question of law. *See James River Ins. Co. v. Ground Down Eng'g,* 540 F. 3d 1270, 1274 (11th Cir. 2008). Whether a policy provision is ambiguous is also a question of law. *State Farm Fire & Cas. Co. v. Metro. Dade County,* 639 So. 2d 63, 65 (Fla. 3rd DCA 1994).

When interpreting an insurance policy under Florida law, the policy's terms are interpreted "in accordance with the plain language of the policies as bargained for by the parties." *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F. 4th 1255, 1264 (11th Cir. 2021) (citing *Prudential Prop. & Cas. Ins. Co. v. Swindal,* 622 So. 2d 467, 470 (Fla. 1993)). When "a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id*. (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co*, 913 So. 2d. 528, 532 (Fla. 2005)). Courts "may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id*. That means "[w]hen contractual language is clear and unambiguous, [courts] cannot indulge in construction or interpretation of its plain meaning." *Id*. A "true ambiguity exists only when the language at issue is reasonably susceptible to more than one interpretation.'" *Id*. However, "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner" or because "it is complex or requires analysis." *Id*. (citing *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007)). In fact, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance

11

policy is considered ambiguous." *Garcia v. Federal Ins. Co.,* 969 So. 2d 288, 291 (Fla.2007) (quotation marks and citations omitted).  However, an ambiguity does not exist based on "fanciful, inconsistent, and absurd interpretations of plain language" and "[i]t is the duty of the trial court to prevent such interpretations." *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th DCA 1984).

C. **The Protective Safeguards Endorsement Is Clear and Unambiguous and Requires At Least Two Fire Extinguishers at the Property.**

The Protective Safeguards Endorsement modifies the Policy by adding certain conditions of insurance. The endorsement contains a Schedule, which lists and identifies each of the Insured's ten properties.  Next to each location, the applicable protective safeguard symbol "P-9" is affixed.  Within the Schedule, safeguard "P-9" is described as "FIRE EXTINGUISHERS."  (ECF No. 15-1, pp. 39-42.)  Notably, the Protective Safeguards Endorsement painstakingly specifies -- as depicted in the Schedule -- that the "P-9" symbol applies to each of the ten listed properties.  The "P-9" symbol appears besides each enumerated property and is used ten times within the Schedule.  Moreover, the "P-9" protective safeguard is defined in the plural form as "FIRE EXTINGUISHER**S**," not fire extinguisher (singular).[5]

Given its plain meaning, the deliberate use of the plural terminology, and the intentional placement of the "P-9" symbol adjacent to each listed property, the Protective Safeguards Endorsement clearly and unambiguously confirms the

---

[5] As noted above, Plaintiff/Counter-Defendant does not dispute that the Protective Safeguards Endorsement uses the plural terminology.

12

requirement that each scheduled location must have more than one fire extinguisher. This is the <u>only reasonable</u> interpretation of the Protective Safeguards Endorsement.

The Insured's first alleged interpretation, that the Protective Safeguards Endorsement requires a single fire extinguisher at each of the ten properties, is not a reasonable interpretation because it is not supported by the plural use of "FIRE EXTINGUISHERS," and the deliberate placement of the "P-9" symbol next to each property.

Similarly, the Insured's second alleged interpretation, that the Protective Safeguards Endorsement only requires at least two fire extinguishers among the ten different locations, is a fanciful and absurd interpretation, which is wholly unsupported by the language and structure of the Schedule. Indeed, the second alleged interpretation is completely unreasonable because it would mean that some properties would not even need to have one fire extinguisher. Hypothetically, the Insured could satisfy the endorsement by only having two fire extinguishers at one location and none at the remaining nine properties. This dubious interpretation: (1) disregards the meticulous placement of the "P-9" safeguard symbol next to each scheduled property; (2) introduces uncertainty as to which property would have the benefit of a fire protective safeguard; and (3) leads to the absurd and unreasonable expectation that Great Lakes would be required to indemnify a fire loss in circumstances where the Insured failed to protect a particular property, by unilaterally deciding not to place a single fire extinguisher at that location.

13

As neither of the Insured's alleged interpretations are reasonable, the Insured's self-serving claim, that the Protective Safeguards Endorsement is ambiguous, is entirely without merit. There is simply no credible argument or interpretation that the endorsement requires anything other than the placement of at least two fire extinguishers at each property, including the subject Property. Therefore, Great Lakes' sole reasonable interpretation is fully dispositive of Count I of the Amended Counterclaim.

### D. Coverage Is Barred Due to Insured's Breach of the Protective Safeguards Endorsement.

The Protective Safeguards Endorsement expressly states that the "P-9" protective system is an additional "condition of insurance" which, if breached, relieves the insurer from having to pay for fire loss. (ECF No. 15-1, pp. 39-42.) More specifically, the Insured's failure "to maintain any protective safeguard listed in the Schedule" precludes payment "for loss or damage caused by or resulting from fire." (*Id*. at 42.) Based on Great Lakes' interpterion outlined above, the Insured's admitted failure to comply with the Protective Safeguards Endorsement is fully dispositive of Count II of the Amended Counterclaim.

Here, Great Lakes' denial of coverage was warranted because the Insured breached the Protective Safeguards Endorsement by not maintaining at least two fire extinguishers at the Property. By its own admission, the Insured had only one extinguisher at the Property -- an admission that precludes coverage of the Loss. Ex.

1, Nichols Decl. ¶ 14; Tab "B," Lovett Exam., 34:1-35:11.[6] Assuming that there was indeed one fire extinguisher at the Property, the Insured still would have breached the clear and unambiguous Protective Safeguards Endorsement by failing to maintain at least two fire extinguishers at the Property.

## V.     CONCLUSION

As outlined in detail herein, the Protective Safeguards Endorsement is straight-forward, clear, and unambiguous.  The Protective Safeguards Endorsement imposes an additional condition of insurance to the subject commercial-lines policy, which requires that at least two fire extinguishers be maintained at each scheduled property, including the subject Property. The Insured's attempts to re-write the Protective Safeguards Endorsement and advance unreasonable interpretations, should be rejected as a misguided cover-up for its failure to comply with the endorsement.  As the Insured breached the Protective Safeguards Endorsement, Great Lakes' coverage denial was proper.  Accordingly, Great Lakes is therefore entitled to summary judgment on the Amended Counterclaim as a matter of law.

**WHEREFORE**, Great Lakes respectfully requests that this Court: (1) enter an order granting its Motion for Final Summary Judgment on its Amended Counterclaim for Declaratory Judgment, declaring that (i) the Policy requires Plaintiff/Counter-Defendant to maintain at least two fire extinguishers at the Property pursuant to the

---

[6] As noted above, Great Lakes disputes that the Insured had *any* fire extinguishers at the Property at the time of loss, but for the purposes of this motion, Great Lakes cites to Mr. Lovett's admission that a single fire extinguisher was present at the Property.

Protective Safeguards Endorsement; and (ii) the Policy does not provide coverage for the Loss due to Plaintiff/Counter-Defendant's breach of the Protective Safeguards Endorsement; (2) enter Final Judgment in favor of Great Lakes against Plaintiff/Counter-Defendant; and (3) award any and all other relief this Court deems just and proper, including without limitation, awarding Great Lakes' reasonable costs incurred.

Respectfully submitted on August 23, 2022.

By: */s/ David B. Levin*
David B. Levin
Florida Bar No. 026394
Desislava K. Docheva
Florida Bar No. 1010440
Brian W. Fernandez
Florida Bar No. 1029848

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
1 Financial Plaza, Suite 1620
Ft. Lauderdale, Florida 33394
Telephone: (954) 768-1600
dlevin@bakerdonelson.com
ddocheva@bakerdonelson.com
bfernandez@bakersonelson.com

Counsel for Great Lakes Insurance SE

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY I hereby certify that on August 23, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

>Hans Peter B. Haahr, Esq.
>Haahr Law Group, PL
>4159 Central Ave.
>St. Petersburg, FL 33713
>hans@hhlegal.com
>lina@hhlegal.com
>Attorneys for Plaintiff/Counter-Defendant

*/s/ David B. Levin*