UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No: 8:21-cv-2932-SCB-MRM

NEW MARKET REALTY 1L, LLC,

    *Plaintiff/Counterclaim Defendant,*

v.

GREAT LAKES INSURANCE SE,

    *Defendant/Counterclaim Plaintiff.*

_____/

**PLAINTIF/COUNTER-DEFENDANT'S RESPONSE TO DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT ON AMENDED COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INCORPORATED MEMORANDUM AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant, New Market Realty 1L, LLC, files this Response to Defendant/Counter-Plaintiff's Motion for Final Summary Judgment on Amended Counterclaim for Declaratory Judgment (ECF No. 34) and Cross-Motion for Partial Summary Judgment. In support, Plaintiff/Counter-Defendant states as follows:

**INTRODUCTION**

This case involves a lawsuit for breach of contract due to Great Lakes Insurance SE (hereinafter "Great Lakes") denial of coverage for a fire at an insured residential rental property located at 1140 15 Ave. S., St. Petersburg, Florida. Plaintiff, NEW MARKET REALTY 1L, LLC (hereinafter "Insured" or "Plaintiff") obtained an insurance policy from Great Lakes with a policy period of 11/30/2020 to 11/30/2021 (hereinafter "policy"). The policy issued by Great Lakes covers a total of ten different single family residential rental properties, including the property located at 1140 15 Ave. S., St. Petersburg, Florida. The fire at the above-referenced

property was on December 21, 2020. Great Lakes denied coverage for the fire loss based on its erroneous interpretation of its own insurance policy's Protective Safeguards Endorsement. *See* attached as Exhibit A. Great Lakes denied coverage stating that the Insured did not comply with the Protective Safeguards Endorsement's requirements by the failure to maintain two or more fire extinguishers at the rental property.

## SUMMARY OF ARGUMENT

The only issue before the Court is the interpretation of the requirements under the Protective Safeguards Endorsement. Importantly, neither the insurance policy nor the Protective Safeguards Endorsement state how many fire extinguishers the Insured is required to have at each of the ten insured properties covered under the policy. The Insured's position is that the denial of coverage was a breach of the insurance policy contract including the Protective Safeguards Endorsement. Below is a summary of the reasons why Great Lakes' denial is inconsistent with the policy, and the Protective Safeguards Endorsement:

1. The plain and only reasonable reading of the Protective Safeguards Endorsement is that one single fire extinguisher is required at each of the ten insured locations. Any other reading of the Protective Safeguards Endorsement would lead to an absurd and inconsistent interpretation and render the Endorsement ambiguous.

2. Defendant's interpretation of the policy's Protective Safeguards Endorsement that it requires two or more fire extinguishers at each insured location is unreasonable when considering the policy and the Protective Safeguards Endorsement does not have any written instructions or definitions informing the Insured of such requirement.

3. If the Court should find Defendant's interpretation reasonable it would make the Protective Safeguards Endorsement ambiguous because it, then provides more than one reasonable interpretation as to the Endorsement's requirement. Assuming arguendo the Protective Safeguards Endorsement required two or more fire extinguishers at each insured location, the drafter of the policy (Great Lakes), should have included specific language as to the exact number of fire extinguishers required at each location and indicated where the unspecified number of fire extinguishers should be placed at each insured location. Placing two, three or more fire extinguishers in the garage would hardly make any sense, but according to Defendant's logic would satisfy the Endorsement's requirements.

4. Because the policy's Protective Safeguards Endorsement is ambiguous the policy must be construed in favor of the policyholder and coverage.

5. The Insured has presented undisputed evidence of at least one fire extinguisher at the property prior to the fire loss on December 21, 2020. The policyholder's maintenance worker, Mr. Jamie Harper and tenant, Ms. Daphne Moss both verified the presence of at least one fire extinguisher at the insured's location. *See* affidavit of Jamie Harper attached hereto as Exhibit B and affidavit of Daphne Moss as Exhibit C. Accordingly, the Court should grant the Plaintiff's partial summary judgment as to coverage under the policy.

As discussed herein, the Court should deny Defendant's unreasonable interpretation of the policy's Protective Safeguards Endorsement and deny its Motion for Summary Judgment and grant Plaintiff Partial Summary Judgment as to coverage under the policy.

## UNDISPUTED FACTS

Defendant submitted a Statement of Facts. [DE 34, pages 2 – 6]. Most of the facts stated therein are undisputed. The Insured agrees with the facts as stated in paragraphs 1, 2, 3, 4, 5, 6, 7, 9 and 10. The Insured does not dispute the language of the policy or the Protective Safeguards Endorsement. The policy was to insure ten (10) single residence rental homes located in St. Petersburg, Florida. [DE 34-1, page 5, Declaration Page, and pages 20–22, Supplemental Declaration]. The policy issued by Great Lakes provided coverage for fire as a named peril. [DE 34-1, page 46 Causes of Loss – Basic Form]. Prior to obtaining the policy, the policy holder's owner, Mr. Joseph Lovett, submitted an insurance application on 11/25/2020. The requested disclosures did not ask one single question as to whether the properties had any fire extinguishers. With these disclosures Great Lakes bound the policy on November 30, 2020, without any communication to the agent or the policyholder as to additional needed improvements or additional safeguards for coverage under the policy.

## STANDARD OF REVIEW

A.  **Summary Judgment:**

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.* (citation omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

Whereas "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote call number omitted). If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted).

"Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1);

alteration added; quotation marks omitted). "When the moving party has the burden of proof at trial, that party must show. . . that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (alteration added; citations and emphasis omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

B.  **Interpretation of Insurance Policy:**

Plaintiff agrees that the interpretation of Great Lakes' policy of insurance is controlled by Florida law based on diversity jurisdiction. The policy must be read as a whole, and every provision given its full meaning and operative effect. However, "[E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy." *State Farm Mut. Automobile Insurance Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986). Ambiguities in insurance policies are construed against the insurer and in favor of the insured. *Medley Warehouses, LC v. Scottsdale Ins. Co.*, 39 So. 3d 440 (Fla. 3d DCA 2010). When there is an ambiguity in an insurance policy, the policy must be interpreted in favor of coverage. *Acosta, Inc. v. National Union Fire Ins. Co.*, 39 So. 3d 565 (Fla. 1st DCA 2010). Under Florida law, if insurance policy language is susceptible of more than one reasonable interpretation, the policy is considered

ambiguous and strictly construed against the drafter who prepared the policy. *Small v. New Hampshire Indem. Co.*, 915 So. 2d 714 (Fla. 5th DCA 2005); *Eddy v. Continental Cas. Co.*, 784 F. Supp. 2d 1331 (M.D. Fla. 2011).

When an insurance policy is susceptible to more than one reasonable interpretation, the court will resolve the ambiguity in favor of the insured by adopting the interpretation that provides coverage. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566 (Fla. 2011). "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Federal Ins. Co.,* 969 So. 2d 288, 291 (Fla. 2007) (quotation marks and citations omitted). The policy is construed against the drafter. *Avatar Property & Casualty Insurance Company, v. Cecilia Castillo & Jorge Guillen,* 4D18-3154, 2020 WL 1933227, at *3 (Fla. 4th DCA Apr. 22, 2020) ("The insurer, is the policy's drafter, easily could have added language including 'any persons who inspected or repaired the covered property.' For us to do so now would re-write the policy."). Additionally, policy provisions which exclude or limit an insurer's liability are construed more strictly than coverage provisions. *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997).

## **ARGUMENTS**

The policy must be read as a whole, and every provision given its full meaning and operative effect. *Fla. Stat.* §627.419(1). Insurance policies will not be construed to reach an absurd result. *General Star Indemnity v. West Florida Village Inn*, 874 So. 2d 26, 28 (Fla. 2d DCA 2004). The Protective Safeguards Endorsement provides the requirements as to type and number of protective safeguards are required by the Insured. The Schedule in the Policy's Protective Safeguards Endorsement states as follows:

## SCHEDULE

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-9 |
| 2 | 1 | P-9 |
| 3 | 1 | P-9 |
| 4 | 1 | P-9 |
| 5 | 1 | P-9 |
| 6 | 1 | P-9 |
| 7 | 1 | P-9 |
| 8 | 1 | P-9 |

**Describe any "P-9":** FIRE EXTINGUISHERS

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

Continued next page.

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 9 | 1 | P-9 |
| 10 | 1 | P-9 |

**Describe any "P-9":** FIRE EXTINGUISHERS

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The following is added to the Commercial Property
**Conditions:**
**Protective Safeguards**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" to "P-5" omitted.**

**"P-9",** the protective system described in the Schedule.

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

1. **The Protective Safeguards Endorsement Requires One Fire Extinguisher at Each of the Insured Locations:**

   The "P-9", the protective system described in the Schedule indicates which fire protective system is required. The schedule states: "Describe any "P-9": FIRE EXTINGUISHERS." The Protective Safeguards Endorsement states FIRE EXTINGUISHERS as the policy covers ten different properties at ten different locations. The policy does not contain any definitions as to the terms in the Protective Safeguards Endorsement or otherwise instruct the Insured as to the requirements of the Endorsement.

   A natural understanding of ""P-9": FIRE EXTINGUISHERS" for a reasonable person reading the Endorsement would be that at the insured premise 9, a single (one) P-9 is required as FIRE EXTINGUISHERS is in plural as ten (10) different homes are insured under the policy. In this regard, the Endorsement refers to "Protective Safeguards", and lists six different safeguards

("P-1", "P-2", "P-3", "P-4", "P-5" and "P-9"). *See* Exhibit A. The Endorsement then states in the exclusory language: "We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:"

> "**1.** Knew of any suspension or impairment in any protective "<u>safeguard</u>" listed in the Schedule above. . ."
>
> "**2.** Failed to maintain any protective <u>safeguard</u> listed in the Schedule above. . ."

The two exclusions of coverage state a "safeguard" is needed in the schedule above, indicating only a single fire extinguisher safeguard is required to be maintained as a fire extinguisher is a protective safeguard. Again, a reasonable understanding of a safeguard in the schedule would be to have a fire extinguisher located at each insured location. Alternatively, the policyholder is left guessing as to the meaning of the Protective Safeguards Endorsement requirements and exclusion, rendering the policy ambiguous. *Kings Ridge Community Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So. 3d 74, 79 (Fla. 5th DCA 2012).

**2.    The Protective Safeguards Endorsement does not Require Two or More Fire Extinguishers at Each Insured Location.**

Defendant's argument that the Protective Safeguards Endorsement requires two or more fire extinguishers is flawed. From the ""P-9": FIRE EXTINGUISHERS" (plural) Defendant extrapolates the Insured must have two or more fire extinguishers at each of the ten single family rental properties. This is without any instructions or definitions in the policy stating each of the insured locations must have two or more fire extinguishers. We know Defendant's interpretation is illogical because had the policy said FIRE EXTINGUISHER (singular) the policy arguably would have only required a single fire extinguisher among all the ten properties. That is clearly not the intent of the policy. Thus, a requirement for one fire extinguisher at each of the ten

properties necessitated a plural "FIRE EXTINGUISHERS" in the Endorsement's schedule. *See* Exhibit A.

Furthermore, if the drafter intended to have more than one fire extinguisher at each insured location, then the drafter should have defined the term and stated how many more (2, 3, 4 . . . or more?). Defendant is here adding an unintended meaning of the plural extinguishers into the policy. The properties insured under the policy are small rental homes between 3bedroom/2bath, 3bedroom/1bath, and 2bedroom/1bath single residence houses. If the Insured was to place more than one fire extinguisher at each of the ten rental homes, the policy would have needed to say how many (2, 3, 4 or more at each property) and indicate where the fire extinguishers were to be located at each insured location (one in each bedroom or one in the kitchen and each bedroom or some other information as to how many more than one at each location was required). Otherwise, the Insured is left to guess as to how many fire extinguishers were required at each location and where the fire extinguishers should be located.

3.  **The Policy's Protective Safeguards Endorsement is Ambiguous.**

At best, the Protective Safeguards Endorsement provision is ambiguous. An insurer is held responsible for clearly setting forth what damages are excluded from coverage and what is required of the Insured to be afforded coverage under the policy. Ambiguous exclusionary clauses or policy requirements are construed even more strictly against the insurer than coverage clauses. *Id.* An ambiguous provision must be construed strictly against the insurer that drafted the policy and liberally in favor of the insured. Thus, an exclusion is ambiguous when it is susceptible to more than one reasonable interpretation or leaving the policy holder guessing as to the meaning of policy requirement. *Kings Ridge Community Ass'n, Inc. v. Sagamore Ins. Co.*, 98 So. 3d 74, 79 (Fla. 5th DCA 2012).

The term "**FIRE EXTINGUISHERS**" is not defined as to how many and where. The policy at issue could be interpreted in different ways: (1) to require one fire extinguisher at each of the ten insured locations or (2) to require at least two or more fire extinguishers among all the ten insured properties, or (3) require more than two fire extinguishers among the ten insured locations. Without any written instructions or definition in the policy as to what is meant by "FIRE EXTINGUISHERS" or required under the Endorsement, the Insured is left guessing as to the correct interpretation. This is a text-book example of an ambiguous policy provision under Florida law.

The "1" under "Bldg. No." seems to indicate that one fire extinguisher was required at each insured location as it pertains to "P-9". This is illustrated below and is probably the most reasonable interpretation of the policy.

| Insured Location | No. Fire Extinguishers | Protective Safeguard |
| --- | --- | --- |
| 1 | 1 | P-9 |
| 2 | 1 | P-9 |
| 3 | 1 | P-9 |
| 4 | 1 | P-9 |
| 5 | 1 | P-9 |
| 6 | 1 | P-9 |
| 7 | 1 | P-9 |
| 8 | 1 | P-9 |
| 9 | 1 | P-9 |
| 10 | 1 | P-9 |

[Plaintiff's Illustration]. However, as evidenced by Great Lakes current interpretation that the one does not dictate the amount of P-9 (fire extinguishers) at the properties - the policy offers more than one reasonable interpretation. Accordingly, the language is ambiguous. *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 95 (Fla. 2013).

4. **If there is any Ambiguity in the Policy's Protective Safeguards Endorsement Coverage is Afforded.**

As outlined above, the insurance policy is ambiguous as to the number of fire extinguishers required at each of the ten insured locations. The policy covers ten different locations and a reasonable interpretation of "fire extinguishers" would be that each of those locations should have one present, hence, the plural form of extinguishers being used in the policy.

However, even if the policy language is questionable one way or the other as to the interpretation, the Florida Supreme Court has held that when an insurance policy is ambiguous, the provision must be construed strictly against the insurer and in favor of coverage, without considering extrinsic evidence that could be used to possibly clarify the ambiguity. *Wash. Nat'l Ins. Corp. v. Ruderman,* 117 So. 3d 943, 95 (Fla. 2013). Ambiguities in insurance policies are construed against the insurer and in favor of the insured. *Medley Warehouses, LC v. Scottsdale Ins. Co.*, 39 So. 3d 440 (Fla. 3d DCA 2010). When there is an ambiguity in an insurance policy, the policy must be interpreted in favor of coverage. *Acosta, Inc. v. National Union Fire Ins. Co.*, 39 So. 3d 565 (Fla. 1st DCA 2010). Under Florida law, if insurance policy language is susceptible of more than one reasonable interpretation, the policy is considered ambiguous and strictly construed against the insurer. *Small v. New Hampshire Indem. Co.*, 915 So. 2d 714 (Fla. 5th DCA 2005); *Eddy v. Continental Cas. Co.*, 784 F. Supp. 2d 1331 (M.D. Fla. 2011). When an insurance policy is susceptible to more than one reasonable interpretation, the court will resolve the ambiguity in favor of the insured by adopting the interpretation that provides coverage. *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566 (Fla. 2011).

Policy provisions which exclude or limit an insurer's liability are construed more strictly than coverage provisions. An insurer as the drafter of its policy is held responsible for clearly setting forth what damages are excluded from coverage and ambiguous exclusionary clauses are

construed even more strictly against the insurer than coverage clauses. *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997); *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082 (Fla. 2005). An insured left guessing as to what is required under the policy is considered an ambiguity. Here, Defendant's motion for summary judgment should be denied as the Endorsement does not clearly set forth how many fire extinguishers are required at each insured location.

**5.      Plaintiff is Entitled to Partial Summary Judgment as to Coverage.**

The undisputed evidence show that the Insured placed a fire extinguisher at the property prior to the fire. Mr. Lovett testified at the Examination Under Oath attached to Defendant's Statement of Facts [**DE 34-1**]. Mr. Lovett throughout the Examination Under Oath maintained that there was a fire extinguisher at the property insured under the policy:

Page ID 714, Transcript Page 27, Lines 1-3:

> I make sure that safety equipment is in those properties that I have rented out.

Page ID 714, Transcript Page 27, Lines 12 – 15:

> Q.   All right. How about a simple question? Were there fire extinguishers at the property at the time of loss?
>
> A.   Yes.

Page ID 714, Transcript Page 27, Lines 19 -22:

> Q.   It's your sworn testimony here under oath that there were fire extinguishers in the property at the date of loss?
>
> A.   Yes.

Page ID 715, Transcript, Page 28, Lines 2-3:

> Q.   Okay. Where were they located?
>
> A.   In the kitchen, sir.

Again, on Page ID 720/Transcript Page 33, Mr. Lovett is asked 4 more times if he placed fire extinguishers at the properties insured. Mr. Lovett answered each time, yes. The record also shows the Insured was able to contact Jamie Harper, the maintenance worker of his properties, who stated that he had placed a fire extinguisher at the property prior to the tenant, Daphne Moss, taking possession. *See* affidavit attached as Exhibit B. Additionally, the statement by Mr. Harper is corroborated by the tenant, Ms. Moss, who rented the property at the time of the fire. Ms. Moss also stated that a fire extinguisher was present at the property before the fire. *See* affidavit attached as Exhibit C.

Great Lakes has presented no direct evidence that no fire extinguishers were present at the property at the time of the fire. The only sworn testimony filed is an affidavit by Defendant's Corporate Representative, Christopher Nichols [DE 34-1, page 1-4]. Mr. Nichols has no personal knowledge as to any facts in this case. Mr. Nichols did not become involved with the loss until April of 2021. Mr. Nichols has never been to the property where the fire loss occurred. Mr. Nichols has not even spoken to the Insured, any of the witnesses, adjusters, or professionals that investigated the loss. Mr. Nichols sole information as to the loss investigation was based on reviewing the file materials which are hearsay documents. *See* pages 7, 8, 9, and 10 of the deposition transcript of Christopher Nichols filed as Exhibit D.

> Q. So is it fair to say that you -- your extent of knowledge is derived from looking at the file materials in the claims file?
>
> A. Yes.

*See* page 9, lines 24-25 and page 10, lines 1-2 of the deposition transcript of Christopher Nichols filed as Exhibit D. Thus, Mr. Nichols affidavit that other people did not see a fire extinguisher

while inspecting the loss after the fire at the property in inadmissible hearsay or hearsay within hearsay for purpose of summary judgment.[1]

The Insured and two witnesses have attested to at least one fire extinguisher present at the property before the fire. Accordingly, Plaintiff has presented undisputed affidavit evidence as to the compliance with the most reasonable reading of the policy and is entitled to partial summary judgment as to coverage and Defendant's breach of the policy.

## CONCLUSION

Defendant was wrong to deny coverage under the policy's Protective Safeguards Endorsement as the policy does not require two or more fire extinguishers at each insured location. As the drafter of the policy, Defendant had the opportunity to include language to place the Insured of notice of such requirement but failed to do so. The uncertainty as to the number of fire extinguishers required under the Protective Safeguards Endorsement renders the Endorsement ambiguous and the Endorsement must be construed favor of coverage. Furthermore, Plaintiff has presented undisputed evidence that at least one fire extinguisher was present at the property at the time of the fire and the Plaintiff is entitled to partial summary judgment on the issue of coverage.

**WHEREFORE**, NEW MARKET 1L, LLC, respectfully requests this Court enter an Order as follows:

1. Deny Defendant's Motion for Summary Judgment.

---

[1] Federal Rule of Evidence 602 limits the scope of a witness's testimony to matters that are within his or her personal knowledge. Union Pump argues that Bixler was permitted to testify to matters that, although they were not within his own personal knowledge, were within the knowledge of the corporation because Bixler was designated as Union Pump's corporate representative. We disagree. Federal Rule of Civil Procedure 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an *adverse* party to use that deposition testimony during trial. See Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 434 (5th Cir. 2006). However, a corporate representative may not testify to matters outside his own personal knowledge "to the extent that information [is] hearsay not falling within one of the authorized exceptions." *Id.* at 435; see also Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co., 993 F.2d 466, 473 n.29 (5th Cir. 1993) (corporate representative is not permitted to repeat "rank hearsay"). [Emphasis added].

2. Finding the policy's Protective Safeguards Endorsement ambiguous and/or confirming the only reasonable interpretation is that the Endorsement requires one fire extinguisher at each of the ten insured locations.

3. Grant Plaintiff's Cross-Motion for Partial Summary Judgment as to coverage under the policy for the fire loss that occurred on December 21, 2021, and finding Defendant breached the policy of insurance based on its denial of coverage.

4. Grant Plaintiff entitlement to attorney's fees and costs and for all other relief this Court deems just and proper.

Respectfully submitted this September 26, 2022.

**HAAHR LAW GROUP, PL**

By: */s/ Hans Peter Haahr*
**HANS PETER B. HAAHR, ESQ.**
Florida Bar No. 568457
hans@hhlegal.com
4159 Central Avenue
St. Petersburg, FL 33713
Telephone: (727) 896-7777
Facsimile: (727) 896-3999

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 26, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Defendant's attorneys via transmission of Notices of Filing generated by CM/ECF. listed below:

Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
1 Financial Plaza, Suite 1620
Fort Lauderdale, Florida 33394
David B. Levin, Esq.
Brian Fernandez, Esq.
Timothy Goff, Esq.

By: */s/ Hans Peter Haahr*

**HANS PETER B. HAAHR, ESQ.**
Florida Bar No. 568457